UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

MELLISA FAY WEAVER,            )
                               )
    Plaintiff,                 )
                               )
v.                             )    Case No.: 5:18-cv-01775-JHE
                               )
COMMISSIONER OF SOCIAL         )
SECURITY,                      )
                               )
    Defendant.

## MEMORANDUM OPINION[1]

Plaintiff Mellisa Fay Weaver ("Weaver") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB").  (Doc. 1).  Weaver timely pursued and exhausted her administrative remedies.  This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Weaver protectively filed an application for a period of disability and DIB on January 11, 2016, alleging an onset date of January 26, 2014.  (Tr. 120, 184-85). On March 17, 2016, the Commissioner denied her claim, (tr. 142-46), and on April 11, 2016, Weaver requested a hearing before an ALJ, (tr. 152-53).  On January 22, 2017, the ALJ held a hearing, (tr. 70-106), and

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 9).

subsequently denied Weaver's claim on November 14, 2017, (tr. 8-25, 534-47).  Weaver sought review by the Appeals Council, which denied her request for review on August 22, 2018.  (Tr. 1-7).  On that date, the ALJ's decision became the final decision of the Commissioner.  On October 26, 2018, Weaver initiated this action.  (Doc. 1).

On the date of her hearing, Weaver was forty years old, with a high school education and previous work as an ultrasound technician. (Tr. 19, 73).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*,

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or supplemental security income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Weaver met the insured status requirements of the Social Security Act through September 30, 2019, and that Weaver had not engaged in substantial gainful activity since her alleged onset date. (Tr. 13). At Step Two, the ALJ found Weaver had the following severe impairments: degenerative disc disease, arthritis, and obesity. (Tr. 13). At Step Three, the ALJ found Weaver does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14).

Before proceeding to Step Four, the ALJ determined Weaver's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Weaver has the RFC

> to perform light work as defined in 20 CFR 404.1567(b), with a sit/sand [sic] option during the workday for 1-2 minutes every hour or so at the workplace. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and

4

>stairs.  She should not perform activities that require climbing of ropes, ladders, or scaffolds.  She can frequently perform pushing and/or pulling with her right lower extremity and frequently handling [sic] with her left upper extremity.  She should avoid overhead reaching with any extremity.  She should avoid concentrated areas of vibration.  She should avoid areas with and [sic] dangerous, moving, unguarded machinery and work at unprotected heights.

(Tr. 15).

At Step Four, the ALJ determined Weaver was unable to perform any past relevant work. (Tr. 19).  At Step Five, the ALJ determined that, considering Weaver's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Weaver could perform.  (Tr. 19-20).  Therefore, the ALJ concluded Weaver had not been under a disability through the date of her decision.   (Tr. 20).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Weaver challenges the Commissioner's decision on four grounds: (1) the ALJ improperly rejected the opinion of Dr. Eileen Gallagher, Weaver's treating physician, (doc. 11 at 5); (2) the ALJ improperly based the RFC on her own understanding of the combined effects of Weaver's impairments, (*id.* at 7); (3) the ALJ improperly rejected Weaver's pain testimony, (*id.* at 8); and

5

(4) evidence Weaver submitted to the Appeals Council rebutted the ALJ's conclusion as to Dr. Gallagher.

### A. The ALJ Properly Evaluated Dr. Gallagher's Opinion

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Dr. Gallagher provided a medical source statement on January 9, 2017. (Tr. 510-17). Specifically, Dr. Gallagher indicated Weaver: could only occasionally lift up 10 pounds with her right hand and could never lift more; could never carry any amount of weight; could sit for 15-30 minutes at a time for a total of four hours in a workday; could stand for 20 minutes at a time for a total of two hours in a workday; could walk for 10-15 minutes at a time for a total of one hour in

a workday; could occasionally reach overhead, finger, feel, and push/pull and could frequently reach and handle with her right hand; could never reach overhead, handle, finger, feel, and push/pull and could occasionally reach with her left hand; could never climb ladders or scaffolds, balance, stoop, kneel, crouch, and crawl and could occasionally climb stairs and ramps; and could never tolerate exposure to unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold and heat, and vibrations and could occasionally operate a motor vehicle. (Tr. 511-15). Dr. Gallagher also stated Weaver could never shop, walk a block at a reasonable pace, or use standard public transportation. (Tr. 516). Dr. Gallagher attributed these restrictions to "Intravertebral disc disease neck – affecting nerves in arms and hands, and low back, affecting legs esp. night. Arthritis symptoms in both hands." (Tr. 511-15). Dr. Gallagher indicated Weaver "definitely cannot" return to her work as an ultrasound technician. (Tr. 516).

      The ALJ assigned little weight to the restrictions Dr. Gallagher imposed for two reasons. First, the ALJ indicated that the January 2017 statement was undermined by the fact Weaver had not been treated by Dr. Gallagher since November 2016. (Tr. 18). Second, the ALJ found that Dr. Gallagher's restrictions were "grossly overstated" and not supported by the medical records, including the records from Dr. Gallagher's own clinic, the Midway Medical Clinic. (Tr. 18). The ALJ noted those records indicated in both January 2016 and July 2016 that Weaver should maintain normal levels of activity. (Tr. 18). The ALJ gave great weight, however, to the portion of Dr. Gallagher's medical source statement indicating Weaver could not return to her previous work. (Tr. 18).

      Weaver objects to both reasons the ALJ cited. As to the gap in treatment, she states that it is both incorrect, as demonstrated by records she submitted to the Appeals Council (discussed

7

further below), and irrelevant, given that the alleged treatment gap was less than two months. (Doc. 11 at 5). The Commissioner does not really defend that this was good cause to reject Dr. Gallagher's opinion, characterizing it as "essentially remarking that there was gap [sic] in Dr. Gallagher's treatment of Plaintiff" which undermined the opinion's probative value. (Doc. 12 at 9-10). While it is true, as the Commissioner notes, that the frequency of a physician's examination of a claimant can affect the weight given to that physician's opinion, *see* 20 C.F.R. § 404.1527(c)(2)(i), it is unclear why a "gap" of less than two months between treatment and medical source statement would support that Dr. Gallagher treated Weaver infrequently. That said, the Commissioner argues that any error in relying on the gap to discount Dr. Gallagher's opinion was harmless, since substantial evidence supports the ALJ's other rationale. (Doc. 12 at 10) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (ALJ's factual errors were harmless when the ALJ's opinion was otherwise supported by substantial evidence)). The undersigned agrees.

As discussed above, inconsistency with the record as a whole and with the physician's own treatment notes both provide good cause to discount a treating physician's opinion. *Phillips*, 357 F.3d at 1241. Weaver argues that the ALJ simply substituted her hunch for Dr. Gallagher's opinion. (Doc. 11 at 7) (citing *Marbury v. Sullivan*, 957 F.2d 837, 840-41) (11th Cir. 1992) (Johnson, J., concurring)). But as the Commissioner notes, an ALJ's rejection of a treating physician's opinion based on permissible criteria is not the same thing as substituting the ALJ's opinion for that of the treating physician. (Doc. 12 at 10) (citing *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 924 (11th Cir. 2007)). Here, the record contains numerous records from physical examinations that showed findings inconsistent with Dr. Gallagher's opinion as to strength and range of motion. (*See, e.g.,* tr. 329 (October 30, 2012 examination showing 5/5 strength), 346

(April 2, 2014 examination showing motor strength of 5/5 and preserved bilateral grim strength, with no other gross abnormalities), 435-39 (March 14, 2015 exam showing full range of motion in the neck and extremities and a steady gait), 472-74 (March 5, 2016 exam showing Weaver could squat to the floor and recover, bend over and touch her toes, had normal grip strength in both hands and normal range of motion)). As for balancing, the record contains examination findings over the same time frame indicating intact coordination and neurological functioning. (*See, e.g.,* tr. 348, 457). This also included Dr. Gallagher's own records, which indicated on July 21, 2016, that Weaver had reported her back pain treatments were successful and in which Dr. Gallagher encouraged Weaver to maintain normal levels of activity. (Tr. 496). Dr. Gallagher also found no neurological deficits on this visit. (Tr. 495). Furthermore, Dr. Gallagher's conclusion that Weaver could not engage in shopping is belied by Weaver's own report that she did exactly that. (Tr. 250). Weaver argues Dr. Gallagher's definition of "normal levels of activity" does not really mean "normal levels of activity" because Dr. Gallagher also found a "severe decrease in range of motion" and severe muscle spasms, (doc. 11 at 7) (citing tr. 495), but in the context of the record as a whole, the ALJ's interpretation of Dr. Gallagher's statement was not unreasonable. Nor may this court reverse the ALJ for failing to defer to portions of the record that supported Dr. Gallagher's opinion when other portions contradicted it; even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005). Based on this evidence, the ALJ did not commit reversible error by discounting Dr. Gallagher's opinion.

### B. The ALJ Properly Evaluated the Combination of Weaver's Symptoms

Weaver's argument here boils down to her contention that once the ALJ rejected Dr. Gallagher's opinion, there was no medical opinion evidence upon which the ALJ could legitimately base an RFC finding, and that the ALJ "played doctor" by evaluating for herself the

9

RFC.  (Doc. 11 at 7-8).  But it is the ALJ's responsibility to determine a claimant's RFC.  *Phillips v. Barnhart*, 357 F.3d at 1238.  Weaver cites *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15 (1st Cir. 1996), an out-of-circuit case, for the proposition that expert medical opinion evidence regarding claimant's RFC is "ordinarily essential."  (Doc. 11 at 8).  But this does not appear to be consistent with the law of this circuit.   For instance, in *Green*, 223 F. App'x at 923, the Eleventh Circuit rejected the argument that an ALJ may not base his or her RFC on the record evidence when he or she has rejected the only medical opinion supplied by the claimant.  And in *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014), the Eleventh Circuit found the ALJ could determine the claimant's RFC without a medical opinion where the record showed little evidence of impairment.

Here, the evidence was sufficient to support the ALJ's RFC determination.  Although Weaver points to a fusion surgery in her neck and back, and another back surgery following, her contention that her "treating [physician] believes she is unable to work" is undermined by the fact that the ALJ appropriately discounted Dr. Gallagher's opinion, as discussed above.  It is circular to insist that Dr. Gallagher's opinion supports the severity of Weaver's impairments under these circumstances.  As the Commissioner notes, the record contains "examinations in the context of treatment and a physical consultative examination with corresponding opinion, indicating relatively few abnormalities." (Doc. 12 at 13).  Furthermore, the ALJ gave considerable weight to the March 5, 2016 opinion of Dr. Tyler E. Gaston, (tr. 470-75), which contained limitations consistent with the RFC.[4]  Accordingly, the ALJ did not err in assessing Weaver's RFC.

---

[4] Weaver notes that Dr. Gaston did not address some of the limitations contained in the RFC, e.g., pushing and pulling, while Dr. Gallagher did. (Doc. 11 at 6 n.3). Notably, though, the ALJ did not entirely reject Dr. Gallagher's opinion; instead, she gave it less than controlling

**C. The ALJ's Credibility Determination Was Supported by Substantial Evidence**

Next, Weaver argues the ALJ improperly discredited her testimony. The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 288 (11th Cir. 2009).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 364186 at * 4-5. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's

---

weight. In other words, the ALJ credited some of the limitations imposed by Dr. Gallagher to the extent they were consistent with the record.

method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96-7p, 1996 WL 364186 at * 4-8. If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

The ALJ cited the appropriate standard, finding "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the claimant's statements concerning the intensity, persistence, duration, and impact on functioning are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 16). The ALJ then summarized Weaver's activities of daily living, including those in her January 2016 Function Report:

> The claimant performed her personal care and provided care for her family. She prepared meals daily, performed household chores, went outside, drove, shopped in stores once or twice a month, and handled finances, with reminders from her husband. Daily activities included reading the Bible, quilting, watching television, and listening to music. She spent time with others and reported no problems with interactions. She reported no significant limitations following instructions and she could handle changes in routine "well." (Exhibit 4E). The claimant also reported activities during the consultative physical examination by Dr. Gaston in March 2016, showing she was able to dress herself and feed herself. She used no assistive devices, had no difficulty turning a doorknob, and was able to balance a checkbook. (Exhibit 15F).

(Tr. 16). The ALJ concluded that although Weaver had described some limitations in her daily activities, "two factors weigh against considering these allegations to be strong evidence in favor

12

of finding the claimant disabled," specifically that (1) those activities could not be objectively verified and (2) even if Weaver were as limited as alleged, her limitations were unlikely to be connected to her medical condition because of the weak medical evidence and "other factors discussed in this decision." (Tr. 16).

Weaver offers two objections to the ALJ's characterization. First, Weaver contends the ALJ misapplied the pain standard by requiring objective medical evidence of her symptoms. (Doc. 11 at 8-9). Here, Weaver confuses requiring objective *medical evidence* with suggesting that Weaver's statements were less probative because they lacked objective *verification*. In other words, the most reasonable construction of the ALJ's statement is that the objective medical evidence was inconsistent with Weaver's testimony regarding limitations. This is permissible under the regulations. *See* 20 C.F.R. §§ 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms . . . may have on your ability to work); 416.929(c)(4) ("We will consider . . . the extent to which there are any conflicts between your statements and the rest of the evidence, including . . . the signs and laboratory findings."). The record contains substantial evidence to support this conclusion. Although Weaver's function report reflects that she had difficulty with tasks due to back and neck pain, (*see, e.g.,* tr. 249, 252), the record reflects that Weaver reported improvements with her back pain following back surgery in 2012, (*see* tr. 329), and neck surgery in 2014, (tr. 344, 346). And, as discussed above, the record shows frequent normal findings up to 2016 indicating normal strength, normal gait, normal to only-slightly-limited range of motion, and normal neurologic functioning. The ALJ was not incorrect in intimating Weaver's alleged limitations were not supported by the objective medical evidence.

13

Weaver's second objection is that the ALJ failed to offer explicit and adequate reasons for rejecting her pain testimony because her opinion referenced "'weak medical evidence' and 'other factors.'" (Doc. 11 at 10). Implying that the ALJ's reference to "other factors" was vague, Weaver truncates the actual quotation. Instead of a reference simply to "other factors," the ALJ indicated indicated Weaver's descriptions of her activities of daily living, even if accurate, were "difficult to attribute . . . to [her] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors *discussed in this decision*." (Tr. 16) (emphasis added). In other words, the undersigned ought to be able to adequately review the ALJ's reasons for rejecting Weaver's pain testimony by looking to the remainder of the ALJ's decision. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.") (internal quotation marks and citation omitted). That said, the ALJ's rationale here appears to simply restate that Weaver's pain testimony is inconsistent with the objective medical evidence, which, as stated above, is an adequate reason for rejecting Weaver's allegations. Weaver also points to statements by the ALJ that Weaver did not seek treatment and notes that the treatment notes indicate Weaver did not do so because of her lack of insurance. (Doc. 11 at 10). To the extent it was error for the ALJ to rely on Weaver's lack of treatment as an additional reason to discount her testimony, it was harmless under these circumstances because the ALJ's decision was not primarily based on Weaver's lack of treatment. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (ALJ's reliance on plaintiff's poverty-based noncompliance with treatment not reversible error when his decision was primarily based on other factors).

### D. The Appeals Council Did Not Err in Denying Weaver's Request for Review

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. 404.900(b)). The Appeals Council must review a case if it receives additional evidence that is new, material, and chronologically relevant. 20 C.F.R. § 404.970(a)(5); *Ingram*, 496 F.3d at 1261. "[W]hether evidence meets the new, material, and chronologically relevant standard is a question of law subject to . . . *de novo* review," and an erroneous failure to consider such evidence warrants remand. *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). New evidence is noncumulative evidence that was not previously presented to the ALJ, and that evidence is material when "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Evidence is chronologically relevant if "it relates to the period on or before the date of the [ALJ] hearing decision." *Foster v. Colvin*, No. 12-CV-4038-VEH, 2014 WL 1338095, at *4 (N.D. Ala. Mar. 28, 2014) (citing 20 C.F.R. § 404.970(b)). Even records that postdate the ALJ's decision may be chronologically relevant when they assess the conditions that existed prior to the decision and there is no evidence of deterioration. *Washington*, 806 F.3d at 1322.

The specific records Weaver submitted to the Appeals Council are intended to rebut the ALJ's assertion that Weaver did not seek treatment from Dr. Gallagher after November 2016 and to undermine the ALJ's evaluation of Weaver's symptoms. (*See* doc. 11 at 11-12). The records reflect that Weaver did see Dr. Gallagher from March 20, 2017, through August 15, 2017, albeit

15

at the Southview Medical Center rather than the Midway Medical Clinic, for treatment for neck and back pain. (Tr. 42-66). Denying review, the Appeals Council found there was no reasonable probability that this evidence would change the outcome of the decision. (Tr. 2).

As stated above, the ALJ's conclusion that Dr. Gallagher's report was undermined because of a treatment gap is beside the point, so Weaver gains nothing from countering that claim. Furthermore, although Weaver states that the records show her neck and back pain continued to cause her distress, (doc. 11 at 12), the ALJ imposed some limitations based on Weaver's symptoms. Even if the records support that Weaver continued seeking care for her neck and back pain, other evidence in the record contradicts the disabling limitations Weaver alleges based on them. Weaver points to nothing in the new records that would be reasonably likely to change the administrative outcome such that the Appeals Council erred by denying review.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Weaver's claim for a period of disability and DIB is **AFFIRMED**.

DONE this 24th day of April, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE